ELOINCE KNUTSON, ET AL., Plaintiffs, v. MARTHA VIDDERS,
ET AL., Defendants.

**Wills:** CONSTRUCTION: INTEREST OF HEIRS. Where a husband and
1  wife having no children execute a joint will, the husband trans-
ferring to the wife the right and authority over their joint
property, and in case of her survival a life interest therein
with remainder "to be divided equally between our lawful
heirs on both sides," the wife's heirs upon her death were
entitled to share in one-half of the remaining property so de-
vised by him *per stirpes* and not *per capita*.

**Estoppel.** Where heirs knowingly accept the proceeds of an un-
2  authorized sale of devised land for full value, they are there-
after estopped from asserting an interest in the land, in the
absence of a showing that the money was received under either
a misapprehension of their rights or an offer to return the
same.

*Appeal from Wright District Court.*— HON. S. M. WEAVER,
Judge.

THURSDAY, FEBRUARY 9, 1905.

ACTION in equity for partition. After hearing and de-
cree, Martha Vidders and other defendants upon whom no-
tice had been served by publication came in and moved for
a retrial, and such was had. The final decree denied any
relief to such defendants, and they appeal.— *Affirmed.*

*E. H. Addison,* for appellants.

*C. M. Nagle,* for appellees.

BISHOP, J.— The record is somewhat complicated, but
therefrom we extract the following facts: Hellick Quinsland,
a resident of Wright county, died in October, 1889, testate.
His wife, Serene Quinsland, alone survived him; no children

having been born as a result of their marriage. It may also be noted that the parents of both Hellick and Serene had long since been dead. At the time of his death, Hellick Quinsland was the owner in fee of the following described lands in said county, viz.: The south half of the northeast quarter and the north half of the southeast quarter of section 11, and the northwest quarter of section 12, all in township 91, range 26. Said will was duly admitted to probate in Wright county. In the preliminary provision of the instrument, the plural is used, thus: " We, Hellick Quinsland and Serene Quinsland, his wife, hereby make known our last will," etc. So, also, the instrument is signed by both husband and wife. The provision of the will material to the instant controversy is as follows: "I hereby transfer to my wife, Serene Quinsland, the right and authority over our joint property whatever it may be, real or personal, in case she should outlive me, to live on undivided property until her death, the property that is left to be divided equally between our lawful heirs on both sides." Serene Quinsland, the widow, made in writing and filed her election to take under the provisions of the will. Thereafter, and in 1892, heirs of Hellick Quinsland brought proceedings in the district court of Wright county for a construction of the provisions of said will, and thereto the widow and the executor of the estate were made parties defendant. Upon hearing, and in respect of the title to real estate, it was decreed that, subject to the life estate of the widow, the heirs of Hellick Quinsland were the owners in fee of the undivided one-half of said real estate; that the widow, Serene Quinsland, was the owner in fee of the other undivided one-half.

In the year 1894 Serene Quinsland sold and conveyed by deed, with full covenants as to title in fee, etc., the undivided one-half of all the lands to one Folkedahl. To secure the payment of the purchase money, the latter executed and delivered to Mrs. Quinsland a mortgage, covering the lands conveyed, for the sum of $3,200; being practically the full

purchase price.   It seems that judgments had been entered against the heirs of Hellick Quinsland, some or all, and so that in the year 1896 Folkedahl brought an action for partition, making the heirs of Hellick only parties defendant. In said action a decree was rendered making partition, and setting apart to Folkedahl a portion thereof specifically described, and setting apart to the heirs of Hellick Quinsland the remaining portion.   Therein it was also decreed that the mortgage above referred to should be a lien only on the portion set apart to Folkedahl, and the judgments referred to should be a lien only on the portion set apart to the heirs.

In January, 1898, Serene Quinsland died testate, and her will was duly admitted to probate in the district court of Wright county.   The material provisions thereof will be referred to in the further course of this opinion.   The mortgage executed by Folkedahl, and the note secured thereby, passed into the hands of the executor of her estate.   Thereafter suit was brought thereon for judgment and to foreclose, and a decree was entered and a sale had under execution.   During the year for redemption, the defendant in this action, Ole Thompson, purchased the interest of Folkedahl, and on April 25, 1900, he made redemption from the sheriff's sale, paying the sum of $5,533.   In April, 1900, the portion of the real estate set apart to the heirs of Hellick Quinsland was sold at sheriff's sale under execution to satisfy judgments against them in favor of the State Bank of Jewell.

The present action was commenced in September, 1898, by Eloince Knutson, a sister of Serene Quinsland; making all the other heirs of both Hellick and Serene Quinsland and the said Folkedahl parties defendant.   The action is based upon the provisions of the will of Hellick Quinsland, and the prayer is for partition among all the heirs.   All of the heirs of Serene Quinsland being nonresidents of the State, service of notice upon them was had by publication.   The

other defendants were served with notice personally. The latter only appeared to the action, and issue was joined by the filing of answers and cross-petitions. In the respective cross-petitions the defendant Folkedahl set up the prior proceedings, the conveyance to him, and asserted his ownership of the lands set apart to him by the partition decree. The defendant heirs of Hellick Quinsland likewise pleaded their ownership of the lands set apart to them by such decree. Service of notice on the heirs of Serene Quinsland as to the cross-petitions was also had by publication. A hearing was had, and on December 27, 1898, the court, after adjudging the defendants served by publication to be in default, entered a decree approving the decree theretofore entered, and confirming title in the heirs of Hellick Quinsland to the lands set apart to them by such former decree. And on January 17, 1899, the court entered a further or supplementary decree confirming in Folkedahl the title to the lands conveyed to him by Mrs. Quinsland as against plaintiff and all codefendants.

The will of Serene Quinsland provided for some minor bequests, and then directed the distribution of all the balance of her estate which amounted to about $3,000, equally between her brothers and sisters living, and the children of those deceased. On May 7, 1900, Martha Vidders and other heirs at law of Serene Quinsland — being the persons designated in the petition in this action as the heirs at law of Serene Quinsland, and made defendants and served by publication as hereinbefore stated — appeared in the district court, and in the matter of the estate of said Serene Quinsland, in probate, and by way of a petition of intervention against the executor, asserted the heirship of each, and that together they constituted all the heirs interested in said estate, and demanding that their right to participate in the distribution of said estate be established. A hearing was had, and on June 12, 1900, an order and decree was made and entered finding the interveners to be the sole heirs of

Serene Quinsland, and that each was entitled to a per capita share in her estate. The executor was ordered to make distribution accordingly. It appears that thereafter, and before final decree in the instant action, distribution of the assets of said estate was made as ordered, and the estate closed. On May 8, 1900, Martha Vidders and the other heirs of Serene Quinsland, defendants in the instant action, appeared therein, alleging that they had been served with notice by publication only, and moved the court that the default decrees entered against them be set aside, and that a retrial of the action be had respecting their several rights and interests in the real estate in question. The motion was sustained, and thereupon said defendants filed answers asserting, in substance, that the will of Hellick Quinsland granted to his widow a life estate only; that, subject to such life estate, the fee title to the real estate of which he died seised under said will became vested in the heirs of himself and his widow, each taking a per capita share thereof; that is, there being seven heirs of Hellick, and eighteen heirs of Serene, each took a one-twenty-fifth interest; further denying that they are bound by the several decrees construing the will of Hellick Quinsland and granting partition; denying that Folkedahl obtained any title in fee under the deed to him, and denying that their interests in the lands were in any way affected by the proceedings of foreclosure and sale under the mortgage executed by him; denying that the heirs of Hellick Quinsland took title under the will in any other portion than a one-twenty-fifth interest in each. By cross-petition, Ole Thompson, grantee of Folkedahl, and the State Bank of Jewell, were brought in as defendants, and each answered. Among other things, each pleads an estoppel based upon the fact that the moneys in the hands of the executor of the estate of Serene Quinsland, and of which distribution was made to the cross-petition plaintiffs, were derived wholly from the foreclosure redemption made by said Ole Thompson.

In the decree as finally entered, the court finds the facts,

and the proceedings based thereon, to be substantially as above stated by us. These further findings of fact are made: That the sale of the undivided one-half interest in the lands by Serene Quinsland to Folkedahl was for the full value of such interest; that Ole Thompson purchased said land for full value, and made redemption in good faith in reliance upon the title as it appeared of record at the time, and that he was a bona fide purchaser for value; that the money in the hands of the executor of the estate of Serene Quinsland for distribution was derived from the proceeds of the foreclosure redemption made by Thompson, grantee of Folkedahl; and that this was known to the complaining defendants, heirs of Serene Quinsland, at the time they made application for the order of distribution of said moneys, and when they accepted and receipted for the same.

There is no merit in the contention of appellants that by the terms of the will of Hellick Quinsland a per capita distribution among the heirs of himself and his wife was intended. 1. WILLS: construction; interest of heirs. The language of the will is, " to be divided equally between our lawful heirs on both sides." Here is conveyed the thought that two parts were in contemplation — one to go to the heirs of the husband, and the other to the heirs of the wife. And this accords with the true etymological significance of the word " between." Webster's International Dictionary. See also, the following cases: `Ross' Ex'r v. Kiger, 42 W. Va. 402 (26 S. E. 193); Record v. Fields, 155 Mo. Sup. 314 (55 S. W. 1021); Bassett v. Granger, 100 Mass. 348; In re Ihrie's Estate, 162 Pa. 369 (29 Atl. Rep. 750). Moreover, the existing conditions make it probable that the intent of the parties was that distribution should be made per stirpes, and not per capita.

It is manifest from a reading of the decree that the trial court accepted the plea of estoppel, and the evidence offered in support thereof, as sufficient upon which to 2. ESTOPPEL. deny relief to the complaining defendants. As we think the record warrants the finding of facts made by the

court, we have no difficulty in reaching the conclusion that the decree was right, and should not, therefore, be disturbed. Whatever may be said of the things done and the various proceedings had prior to the appearance of those who now complain, it certainly cannot be said that they may knowingly take of the proceeds of an unathorized sale made for full value, and then be permitted to go behind the sale and claim an interest in the land itself.   And this especially in the absence of any claim that the money was taken under a misunderstanding of their rights, and of an offer to make return. Equity will not tolerate one in taking positions thus inconsistent and unjust.   Authorities are not needed to support our conclusions, but see *Deford v. Mercer,* 24 Iowa, 118; *Rump v. Schwartz,* 67 Iowa, 471; *Lathrop v. Doty,* 82 Iowa, 272; *Leathers v. Ross,* 74 Iowa, 630; *Thompson v. Simpson,* 128 N. Y. 270 (28 N. E. Rep. 627).

It follows from what we have said that the decree should be, and it is, *affirmed.*

WEAVER, J., taking no part.